## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JASON A. CAFFEY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 15-00490-N |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Jason A. Caffey has brought this action under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 15, 16).

Upon consideration of the parties' briefs (Docs. 11, 12) and those portions of the administrative record (Doc. 10) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])") relevant to the issues raised,[1] the Court finds that the Commissioner's decision is due to be **REVERSED and REMANDED** under sentence four of § 405(g) for further proceedings consistent with this decision.

---

[1] With the Court's consent, the parties jointly waived the opportunity for oral argument. (*See* Docs. 14, 17).

# I.   **Procedural Background**

On May 29, 2012, Caffey filed an application for a period of disability and DIB with the Social Security Administration ("SSA").[2]   Caffey initially alleged disability beginning October 3, 2003, but subsequently amended his alleged onset date to January 1, 2008.[3]   After his application was initially denied, Caffey requested a hearing, which was held before an Administrative Law Judge ("ALJ") for the SSA's Office of Disability Adjudication and Review on August 7, 2013, with a supplemental hearing held on February 3, 2014.   On March 20, 2014, the ALJ issued an unfavorable decision on Caffey's application, finding him "not disabled" under the Social Security Act and thus not entitled to benefits.  (*See* R. 54 – 79).

The Commissioner's decision on Caffey's application became final when the Appeals Council for the Office of Disability Adjudication and Review denied Caffey's request for review of the ALJ's decision on August 20, 2015.  (R. 1 – 6).  On October 2, 2015, Caffey filed this action under § 405(g) for judicial review of the Commissioner's final decision.  (Doc. 1).  *See* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the

---

[2] The Social Security Act's general disability insurance benefits program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a).

[3] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured.  42 U.S.C. § 423(a)(1)(A) (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.   <u>Standard of Review</u>

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)).  However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))).  " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, we must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons.  [The court] must scrutinize the record as a whole to determine if the

decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts."). "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

However, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) (West Supp. 1982) (emphasis added). As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (footnote and some citations and

quotation marks omitted)).  This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).  "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260  (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)).  *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB … requires that the claimant be disabled. 42 U.S.C. §[] 423(a)(1)(E) … A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §[] 423(d)(1)(A)…

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per curiam) (unpublished).[4]

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they

The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[5]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

---

may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[5] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

Where, as here, the ALJ denied benefits and the Appeals Council denied review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. "[W]hen the [Appeals

Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). If the applicant attacks only the ALJ's decision, the Court may not consider evidence that was presented to the Appeals Council but not to the ALJ. *See id.* at 1324.

## III.   Claims on Judicial Review

1. "The ALJ's mental residual functional capacity assessment is inconsistent with the evidence upon which it purports to rely."

2. "The ALJ's physical residual functional capacity assessment is inconsistent with the evidence upon which it purports to rely."

3. "The ALJ erred in failing to properly assess Mr. Caffey's testimony of medication side effects."

(Doc. 11 at 2).[6]

## IV.   Analysis

At Step One, the ALJ determined that Caffey had "not engaged in substantial gainful activity during the period from his amended alleged onset date of January 1, 2008 through his date last insured of December 31, 2012…" (R. 59). At Step Two,

---

[6] Generally, claims of error not raised in the district court are deemed waived. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115 – 16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court … Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it.").

the ALJ determined that Caffey had the following severe impairments: arthritis in the wrists, knees, hips, and lower back; anxiety; depression; and polysubstance dependence.  (R. 59 – 60).  At Step Three, the ALJ found that Caffey did not have an impairment or combination of impairments that meets or equals the severity of one of the specified impairments in the relevant Listing of Impairments.  (R. 60 – 61).

At Step Four,

the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Caffey had the RFC "to perform a range of light

work as defined in 20 CFR 404.1567(b),[7] in function by function terms (SSRs 83-10 and 06-8p, with certain non-exertional restrictions associated with that level of exertion. The claimant's specific capabilities during the period of adjudication have been the ability to lift 20 pounds occasionally and 10 pounds frequently; sit at least 6 hours in an 8 hour workday; and stand/walk in combination with at least 6 hours in an 8 hour workday. The claimant would have manipulative limitations resulting in the ability to frequently handle bilaterally. He would have postural limitations resulting in the ability to occasionally climb ramps/stairs, stoop, kneel, crouch and crawl and never climb ladders/ropes/scaffolds. The claimant should never work at unprotected heights or with dangerous machinery. The claimant would have residual mental restrictions resulting in a need for simple tasks with short simple instructions; occasional contact with the general public; and only casual supervisors and coworkers with casual meaning the claimant could work in proximity to others but should avoid team type work activity." (R. 61 – 77).

Based on this RFC, the ALJ determined that Caffey was unable to perform any past relevant work. (Doc. 77). At Step Five, the ALJ determined that there

---

[7] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the Commissioner] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

exist significant numbers of jobs in the national economy that Caffey can perform given his RFC, age, education, and work experience. (R. 77 – 78). Thus, the ALJ found that Caffey was not disabled under the Social Security Act. (R. 78).

In her Step Four RFC assessment, the ALJ considered a good deal of evidence, consisting of Caffey's subjective testimony given in his administrative filings and at his administrative hearings (his "statements concerning the intensity, persistence and limiting effects of [his] symptoms" were found "not entirely credible"), the reports of two state agency consultants ("little weight" given to both), and the treatment notes and medical opinions of:

1. one-time examining physician Dr. David Kim, who performed an orthopedic evaluation of Caffey on June 24, 2011, in connection with Caffey's workers' compensation case (findings and opinion given "considerable weight");

2. one-time examining neurologist Dr. Kenneth Nudleman, who evaluated Caffey on June 23, 2011, in connection with the workers' compensation case (opinion given "some weight);

3. treating family physician Dr. Michael Rowland, who treated Caffey from May 12, 2012, until April 13, 2013 (opinions given "little weight");

4. treating physician Dr. Bobby Wrights, who began seeing Caffey on April 22, 2013 (opinions given "little weight");

5. consultative examining psychologist Dr. Kenneth Starkey, who evaluated Caffey on July 27, 2012 (opinion given "significant weight"); and

6. consultative examining psychologist Dr. John Davis, who evaluated Caffey on

September 24, 2013 (opinion given "significant weight").

(*See* R. 61 – 77).

## A.    Claim 1 (Mental RFC)

A mental RFC determination includes an assessment of mental abilities such as the ability to understand, remember, and carry out instructions, and to respond appropriately to supervision, coworkers, and work pressure.    20 C.F.R. § 404.1545(c); *Luterman v. Comm'r of Soc. Sec.*, 518 F. App'x 683, 689 (11th Cir. 2013) (per curiam) (unpublished).    *See also* SSR 96-8P, 1996 WL 374184, at *6 (S.S.A. July 2, 1996) ("Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.").    Claim 1 asserts that the ALJ's mental RFC determination failed to account for key portions of the medical opinions of Dr. Starkey and Dr. Davis, despite giving them "significant weight" (R. 76).

> "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) …
>
> [T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Therefore, when the ALJ fails to "state with at

least some measure of clarity the grounds for his decision," we will decline to affirm "simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam). In such a situation, "to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Cowart*, 662 F.2d at 735 (quoting *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979)) (internal quotation marks omitted).

*Winschel*, 631 F.3d at 1178-79.

At Step Four, after discussing the record evidence relevant to Caffey's mental impairments, including the notes and opinions of Dr. Starkey and Dr. Davis, the ALJ made the following determinations:

> In terms of the claimant's alleged anxiety, depression and polysubstance dependence, the preponderance of the documentary evidence reflects that his level of mental functioning is only moderately impaired by his alleged mental health symptomatology. The record reflects no actual formal mental health treatment since 2003. (Exhibits 15F, 16F and 27F). He has only been prescribed Xanax for anxiety by his general treating physicians; and the record does not contain any evidence that the claimant has sought or was referred to a mental health specialist for treatment of his anxiety/depression during the period at issue. The claimant has reported no depression symptoms to his treatment providers during the period at issue. The claimant has reported no depression symptoms to his treatment providers during the period at issue, and Dr. Davis diagnosed him with depression secondary to a general medical condition. Dr. Davis commented that "This diagnosis is an Axis III diagnosis which recognizes 'normal depression' associated with their medical problems. It is not the same as an Axis I diagnosis of Depression." (Exhibit 27F).
>
> The claimant testified that Xanax is helpful for his anxiety, and he has not had a panic attack since he stared taking his medication. Indeed, Dr. Rowland noted the claimant was calm, in no acute distress and had normal mood/affect during all office visits. (Exhibits 19F, 20F and 25F). When the claimant saw Dr. Wrights on April 22, 2013, he complained of anxiety symptoms including feelings of losing control and palpitations. Dr. Wrights noted previous reported treatment includes benzodiazepines (Xanax 2 mg), which the claimant said he

takes 3-4 daily. The claimant complained of no side effects from the treatment. The claimant had a normal mood and affect. His behavior was normal and he was alert and oriented to person, place and time. His judgment and thought content was also normal. Dr. Wrights diagnosed the claimant with anxiety and continued him on Xanax at a 2 mg dosage. (Exhibit 22F). During the claimant's follow up with Dr. Wrights on June 27 and July 16, 2013, no psychiatric/behavioral complaints were noted during the review of systems or in the diagnosis. (Exhibits 26F and 28F). The review of systems on August 27, 2013 was positive for agitation; but the psychiatric exam reflected a normal mood and affect. Dr. Wrights refilled the claimant's Xanax at 2 mg to be taken 3-4 times a day for anxiety. (Exhibit 28F).

Overall, it appears that the claimant's mental condition is generally controlled with his medication regimen based on his testimony and normal mental status exams with his treating physicians. The undersigned finds that he is capable of performing simple tasks with short simple instructions; occasional contact with the general public; and only casual supervisors and coworkers with casual meaning the claimant could work in proximity to others but should avoid team type work activity.

Polysubstance dependence related to opioids and benzodiazepines was addressed by the consultative examiners in Exhibits 16F and 27F. The undersigned finds this condition is not material, as the record does not document maladaptive use of his prescription medications ongoing throughout the period at issue (SSR 13-2p). The record does contain some indications that the claimant has not taken these medications exactly as prescribed. Dr. Starkey noted the claimant had "NO Lortab pills remaining in the bottle from a prescription of 168 such pills filled 20 days prior to our meeting, and only 6 Xanax pills from a prescription of 112 such pills prescribed 20 days prior to our meeting." (Exhibit 16F). Dr. Rowland discharged the claimant from his practice in April 2013 due to violating the pain management contract. (Exhibit 25F). The claimant also testified that he is supposed to take Xanax 3-4 times a day, but he had been taking it more often recently. However, as noted above, the alleged sedative side effects related to his medications have been accounted for in the residual functional capacity with the mental and environmental limitations.

(R. 73 – 74).

The ALJ <u>then</u> proceeded to weigh "the opinion evidence," discussing the opinions of Dr. Starkey and Dr. Davis as follows:

> The opinions of Dr. Starkey and Dr. Davis are given significant weight as they are generally consistent with the mental residual functional capacity above. Dr. Starkey opined that the claimant can understand, remember and carry out simple/concrete instructions. However, his ability to work independently (versus with close supervision[)]; to work with supervisors, co-workers and general public; and his ability to deal with work pressures appeared marginal at the time. (Exhibit 16F). Dr. Davis opined that the claimant's ability to understand, remember and carry out complex instructions and make judgments on complex work-related decisions is moderately impaired. Dr. Davis also said the claimant has moderate impairment in the ability to interact appropriately with the public, supervisors and co-workers and respond appropriately to usual work situations and to changes in routine setting. (Exhibit 27F). As a result, the claimant would have moderate difficulties in maintaining social functioning and concentration, persistence or pace.

(R. 76 – 77).

Caffey argues that the ALJ reversibly erred in failing to sufficiently explain "the reasons therefore" in assigning "significant weight" to the opinions of Dr. Starkey and Dr. Davis. Caffey notes that the RFC "provides no specific limitation regarding Mr. Caffey's ability to deal with work pressure[,]" which Dr. Starkey opined was "marginal," and his ability "to respond appropriately to usual work situations and changes in routine settings[,]" which Dr. Davis opined was "moderately impaired." (Doc. 11 at 9). Caffey also asserts that the RFC's limitation to tasks with "casual supervisors and coworkers with casual meaning the claimant could work in proximity to others but should avoid team type work activity" is inconsistent with Dr. Starkey's opinion that Caffey's ability to work independently (versus with close supervision) was "marginal." (*Id.*). He further argues that,

because these limitations were not included in the ALJ's hypothetical questions to the vocational expert ("VE") at Step Five, the VE's testimony that there exist significant numbers of jobs that Caffey can perform does not constitute substantial evidence.[8]  *See* (*id.* at 9, 11 – 12); *Winschel*, 631 F.3d at 1180 ("In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." (quotation omitted)).

As Caffey notes in his brief, the undersigned, observing that "medical opinions are generally multifaceted" and that, "in the course of determining a plaintiff's residual functional capacity ('RFC'), an ALJ may choose to accept some conclusions-or recommended related restrictions-made within an opinion while rejecting others[,]" has stated:

> If such a choice is made, in addition to explaining the overall weight given to a particular medical opinion, the ALJ also must explain with at least some measure of clarity the grounds for a decision to adopt particular aspects of a medical opinion. Any failure to explain his or her rationale in this regard will result in a reviewing court declining to affirm simply because some rationale might have supported the ALJ's conclusion.  []Picking some restrictions while rejecting others *without explanation* is clearly grounds to find that an ALJ's decision is not supported by substantial evidence and, therefore, order that it be remanded for further consideration.

---

[8] "At step five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform.  An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a vocational expert."  *Winschel*, 631 F.3d at 1180 (citations omitted).  However, where, as here, "nonexertional impairments exist, the ALJ may use Medical–Vocational Guidelines as a framework to evaluate vocational factors, but must also introduce independent evidence, preferably through a vocational expert's testimony, of existence of jobs in the national economy that the claimant can perform."  *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam).

*Smith v. Colvin*, Civil Action No. 2:13-00275-N, 2014 WL 518057, at \*3 (S.D. Ala. Feb. 10, 2014) (citations, quotations, and footnote omitted).[9]

Nevertheless, the RFC assessment is ultimately the ALJ's responsibility.[10] At least where the opinion is not from a treating source,[11] the Eleventh Circuit imposes no rigid requirement that an ALJ, in crediting a medical opinion, must repeat it word for word in the RFC determination. *See Lewen v. Comm'r of Soc. Sec.*, 605 F. App'x 967, 968-69 (11th Cir. 2015) (per curiam) (unpublished) ("Lewen's contention, that the ALJ did not properly consider the medical opinions, lacks merit. The mental limitations imposed in the ALJ's determination of Lewen's residual functional capacity were consistent with the medical opinions, **even the portions that the ALJ did not specifically quote in her order**. The ALJ limited Lewen to simple tasks and instructions, occasional interaction with the

---

[9] *Smith*'s reasoning relied primarily on the reasoning of non-binding district court and Tenth Circuit Court of Appeals opinions, while simply noting that "the Eleventh Circuit … has not held otherwise…"  *Smith*, 2014 WL 518057, at \*3 & n.4.  Though not binding, *see United States v. Cerceda*, 172 F.3d 806, 812 n.6 (11th Cir. 1999) (en banc) (per curiam) ("The opinion of a district court carries no precedential weight, even within the same district."), *Smith* is instructive.

[10] *See* 20 C.F.R. §§ 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart, your residual functional capacity (see §§ 404.1545 and 404.1546), or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner."), 404.1546(c) ("If your case is at the administrative law judge hearing level … , the administrative law judge … is responsible for assessing your residual functional capacity."); *Moore v. Soc. Sec. Admin., Com'r*, 649 F. App'x 941 (11th Cir. 2016) (per curiam) (unpublished) ("[T]he task of determining a claimant's residual functional capacity and ability to work rests with the administrative law judge, not a doctor." (citing 20 C.F.R. § 404.1546(c))).

[11] "Absent good cause, an ALJ is to give the medical opinions of treating physicians substantial or considerable weight."  *Winschel*, 631 F.3d at 1179 (quotation marks omitted). Neither Dr. Davis nor Dr. Starkey is a treating physician for Caffey.

public, and occasional routine interaction with supervisors. Lewen was further limited to tasks and instructions that were 'consistent with unskilled work.' There is no indication that these limitations do not account for the doctors' opinions in their entireties. Rather, any need to limit Lewen's ability to concentrate, deal with stress, or maintain a regular schedule on the job—opinions that Lewen argues are omitted from the ALJ's decision—is accounted for by the ALJ limiting her to simple tasks and unskilled work with little interaction with the public and supervisors. Moreover, there is no indication that the doctors, by opining that Lewen might have difficulties dealing with stress, concentrating, or maintaining a schedule, meant that these limitations would limit her ability to work a full work day/week. These doctors opined that, despite these limitations, she could perform simple routine tasks. Finally, while the ALJ is required to state the weight afforded to each medical opinion, the ALJ is not required to discuss every piece of evidence." (citations omitted) (emphasis added)); *Adams v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 531, 534 (11th Cir. 2014) (per curiam) (unpublished) ("[T]he ALJ did not err by failing to specifically address Adams's neurologist's opinion that she should avoid frequent overhead reaching, and that she needed to take 5–minute breaks every 45 minutes, as his written decision made clear that he considered both the neurologist's opinion and Adams's medical condition as a whole." (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam))); *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (per curiam) (unpublished) ("To the extent that an administrative law judge commits an error, the error is harmless if it

did not affect the judge's ultimate determination. *See Diorio v. Heckler,* 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error doctrine in a Social Security appeal after finding that an administrative law judge made 'erroneous statements of fact').”); *Shaw v. Astrue*, 392 F. App'x 684, 687 & n.1 (11th Cir. 2010) (“Shaw argues that the ALJ did not address Dr. Muller's opinion that she had poor abilities to interact with supervisors or to deal with work stress when making the RFC finding.   []The ALJ did not reject Dr. Muller's opinions explicitly or implicitly. Rather, he made two references to Dr. Muller's opinions, both of which were positive.   The ALJ noted that he found several statements made by Shaw to Dr. Muller that were in direct conflict with statements made to Dr. Naqvi, and therefore not credible.   Ultimately, however, he relied on Dr. Muller's opinions in making an RFC limiting Shaw to light exertional work, including work with simple instructions and no more than limited public contact.   Although he did not specifically address the findings regarding poor functionality in dealing with supervisors or stress, his RFC finding was not inconsistent with this … Thus, even if the ALJ erred in failing to mention every finding made by Dr. Muller, any such error was harmless. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983).” (record citations omitted)); *Brothers v. Colvin*, No. 3:14-CV-108 (CAR), 2015 WL 4977300, at *1 & n.1 (M.D. Ga. Aug. 20, 2015) (Royal, J.) (“Plaintiff argues the Magistrate Judge did not address the ALJ's failure to account for the examining psychologist's finding that Plaintiff is extremely limited in her ability to deal with supervisors, and the ALJ's failure to do so constitutes reversible error.   The Court

disagrees. As noted by the Magistrate Judge, the record shows the ALJ limited Plaintiff's RFC to work with only occasional interaction with the public and coworkers and gave weight to the examining psychologist's opinion. Indeed, the ALJ's RFC assessment is not inconsistent with the opinion that Plaintiff is limited in her ability to get along with supervisors." (citing *Shaw*, 392 F. App'x at 686)), *aff'd*, *Brothers v. Comm'r of Soc. Sec.*, 648 F. App'x 938 (11th Cir. 2016) (per curiam) (unpublished).

Though Caffey does not specifically identify this issue, the undersigned initially observes that the ALJ's stated reason for assigning "significant weight" to these opinions was because they were "generally consistent with [Caffey's] mental residual functional capacity above." (Doc. 76). Indeed, the very sequence of the ALJ's written decision indicates that she formulated the mental RFC prior to weighing the medical opinions of record. *See supra*. However, an RFC is to be "assess[ed] based on all the relevant evidence in [a claimant's] case record." 20 C.F.R. § 404.1545(a)(1), (3). Thus, medical opinions, which are relevant evidence, *see* 20 C.F.R. §§ 404.1512(b)(1)(ii), 404.1527(a)(2), are to be examined and weighed as part of the RFC assessment, rather than as *post hoc* justification for an RFC pre-determined without consideration of "all the relevant evidence." In other words, at Step Four the evidence is supposed to justify the RFC, not *vice versa*.

Moreover, it is not clear how, or why, the ALJ synthesized the specific mental limitations in the two opinions into the more general determination that Caffey "would have moderate difficulties in maintaining social functioning and

concentration, persistence or pace," especially when such limitations were not stated in the RFC.   These factors appear to be more relevant at Steps Two and Three, as "social functioning" and "concentration, persistence, or pace" are two of the "four broad functional areas" used to "rate the degree of [a claimant's] functional limitation" as part of the Psychiatric Review Technique ("PRT") used to evaluate the severity of mental impairments.   *See* 20 C.F.R. § 404.1520a(c)(3).[12]   Indeed, the Commissioner has recognized that PRT findings "are not an RFC assessment" and that "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories" of the PRT.   Social Security Ruling (SSR) 96-8P, 1996 WL 374184, at *4 (July 2, 1996).[13]

The record supports the conclusion that the ALJ reversibly erred in failing to clearly address Dr. Starkey's opinion assigning Caffey a marginal ability to work independently.   As noted previously, Caffey had two hearings with the ALJ.   At his

---

[12] The other two "broad functional areas" are "activities of daily living" and "episodes of decompensation."  20 C.F.R. § 404.1520a(c)(3).

[13] Agreeing with other circuits, the Eleventh Circuit has recognized that, "[t]hough the PRT and RFC evaluations are undeniably distinct, *see* 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3), nothing precludes the ALJ from considering the results of the former in his determination of the latter." *Winschel*, 631 F.3d at 1180 (citing *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004) ("While [Social Security Ruling] 96–8p does state that the [PRT] findings are 'not an RFC assessment' and that step four requires a 'more detailed assessment,' it does not follow that the findings on the [PRT] play no role in steps four and five, and [Social Security Ruling] 96–8p contains no such prohibition.")).   In *Winschel*, however, the claimant had argued (successfully) that the ALJ's hypothetical to the VE failed to account for his moderate limitations in maintaining concentration, persistence, and pace identified in Steps Two and Three, with the Commissioner countering that to include such limitations in the hypothetical "would inappropriately conflate independent inquiries" (an assertion the court rejected).   *See id.*   Caffey is not asserting such an argument here.

initial administrative hearing on August 7, 2013, the ALJ asked the VE whether jobs were available for a hypothetical individual with similar age, education, and prior work history as Caffey "who had a marginal ability to work with supervisors, co-workers or the general public and who would have a **marginal ability to work independently**" (both limitations included in Dr. Starkey's opinion), with such limitations resulting "in an inability to sustain activity, remain on task, remain on target for two hour periods at a time eight hours during each work day 40 hours during each work week." (R. 119 (emphasis added)). Notably, the ALJ did not incorporate <u>any</u> of Caffey's RFC into this hypothetical, as she did with the first two hypotheticals. The first VE responded that no jobs would be available for such an individual. (R. 119).

A different VE gave testimony at the supplemental hearing held February 3, 2014. The ALJ's third hypothetical to the second VE again asked whether jobs were available for a hypothetical individual with similar age, education, and prior work history as Caffey who is "unable to sustain activity, remain on task, remain on target for two hour periods of a time over the course of an eight hour work day for 40 hours during each work week either given residual side effects from medication, residual pain or residual psychiatric symptoms." Again, the ALJ did not incorporate any of Caffey's RFC into this hypothetical. (R. 94 – 95). The second VE also responded that no jobs would be available for such an individual. (R. 94 – 95).

The ALJ did not specifically mention Caffey's "marginal ability to work independently" in her third hypothetical to the second VE. However, the third

hypothetical to the first VE reveals the ALJ's reasoning that such a limitation would result in the limitations of being "unable to sustain activity, remain on task, remain on target for two hour periods of a time over the course of an eight hour work day for 40 hours during each work week either given residual side effects from medication, residual pain or residual psychiatric symptoms[,]" which was included in the third hypothetical to both VEs. (*Compare* R. 94 – 95 *with* R. 119). Moreover, the third hypothetical to the second VE included the additional detail that limitations would be based on the "residual side effects of medication, residual pain or residual psychiatric symptoms."  Dr. Starkey's opinion attributed Caffey's marginal ability to work independently "to adverse effects of too much addictive medication." (R. 572 – 573).

At Step Five in her decision, the ALJ made note of her third hypothetical to the second VE, and that VE's answer, but conclusorily stated that she "has accounted for these factors in the residual functional capacity, as explained in detail above." (R. 78).  It is unclear, however, how "account[ing] for these factors" at Step Four somehow renders them non-disabling at Step Five when two VEs each testified that the presence of those factors, and indeed only those factors (that is, without any of the other limitations in his RFC), rendered Caffey unable to find work.

An ALJ is "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam).  Here, however, the ALJ, in assigning

"significant weight" to Dr. Starkey's opinion, specifically mentioned the limitation that Caffey had a "marginal" ability to work independently. (*See* R. 76). The ALJ's decision gives no indication that she gave less weight to this particular limitation than to the others mentioned in Dr. Starkey's opinion. Rather, the ALJ aggregated those limitations into the general determination that Caffey would have "moderate difficulties in maintaining social functioning and concentration, persistence or pace." (R. 76 – 77).

"An administrative law judge may not ask a vocational expert a hypothetical question based on substantial evidence and then ignore unfavorable answers." *Campbell v. Bowen*, 822 F.2d 1518, 1523 n.6 (10th Cir. 1987). *Accord Angel v. Barnhart*, 329 F.3d 1208, 1212 (10th Cir. 2003) ("In performing his step four analysis, the ALJ ignored and failed to address Dr. Schneider's testimony at the hearing, which is supported by her medical records, that Angel needs a sterile environment in which to catheterize herself due to the risk of infection. This omission is significant because, following Dr. Schneider's testimony, the vocational expert (VE) testified, in response to a hypothetical question posed by Angel's counsel, that the requirement of providing Angel with a sterile environment, which would basically require that she have a personal, or private, bathroom, 'would have a negative impact ... [and] would [not] preclude all employment, but it would be rather significant in reducing the occupational base.' []Dr. Schneider's testimony, and the related testimony of the VE, is supported by substantial medical evidence in the record showing that Angel is at high risk of contracting recurrent urinary

tract infections.  We therefore agree with Angel that the ALJ's failure to address the testimony is reversible error." (citing, *inter alia*, *Campbell*, 822 F.2d at 1523 n.6) (record citations omitted)); *Arrington v. Apfel*, 185 F.3d 873 (10th Cir. 1999) (per curiam) (unpublished) ("[T]he hypothetical questions posed to the VE were problematic. The first question, based on Dr. Standefer's findings and plaintiff's condition as of shortly after plaintiff's accident, elicited a series of jobs the VE thought plaintiff could perform, most of which were at least semiskilled. With the additional restrictions of numbness in her dominant hand, however, the VE in his answers to the second and third questions stated there were no jobs she could perform. We have held that an ALJ may not ask a VE a hypothetical question based on substantial evidence and then ignore unfavorable answers. *See Campbell v. Bowen,* 822 F.2d 1518, 1523 n 6 (10th Cir. 1987).")).[14]

---

[14]     Similar errors involving multi-faceted medical opinions were found to merit remand in *Smith v. Colvin*, 2014 WL 518057, and *Dempsey v. Commissioner of Social Security*, 454 F. App'x 729 (11th Cir. 2011) (per curiam) (unpublished).  In *Smith*, the ALJ clearly relied on some parts of a medical opinion to support her determinations at Step Two and Step Four, but did not acknowledge rejecting, or even considering, a portion of that opinion reflecting that the claimant would have to miss 1 – 2 days of work a month due to her psychiatric symptoms.  2014 WL 518057, at *4.  This omission was deemed "significant" because, in response to the ALJ's hypothetical that incorporated that particular limitation, the VE had testified that employers would not tolerate such a rate of absenteeism.  *Id.*

In *Dempsey*, the ALJ addressed and discounted one opinion, regarding the number of days of work per month the claimant would miss due to her impairments, contained in a treating physician's questionnaire, but did not mention another opinion, regarding the claimant's ability to concentrate, contained in the same questionnaire.  454 F. App'x at 733. The Eleventh Circuit held that the "ALJ erred when he failed to mention, much less consider, [the treating physician]'s opinion of Dempsey's ability to concentrate" because the opinion was "contrary to the ALJ's finding in his RFC assessment that Dempsey had no significant mental limitations[,]" and because "[w]hether or not Dempsey has an inability to concentrate [wa]s significant because the vocational expert testified that an individual with all of Dempsey's physical limitations whose pain and other symptoms would interfere with the attention and concentration needed to perform simple work tasks would be precluded from performing any work."  *Id.* at 733 & n.6.

Accordingly, the Court **SUSTAINS** Caffey's assertion in Claim 1 that the ALJ reversibly erred in failing to address with particularity Dr. Starkey's opinion that his ability to work independently was marginal. Thus, the Court need not decide whether the ALJ's alleged failure to sufficiently address the other aspects of Dr. Davis and Dr. Starkey's opinions identified by Caffey in Claim 1 also constitute reversible error. On remand, however, the Commissioner should consider the need to further explain with particularity the weight given to those portions of the medical opinions and the reasons therefor. *Winschel*, 631 F.3d at 1179.

### B.    Claim 2 (Physical RFC)

Caffey's assertions of error in Claim 2 are similar to those in Claim 1, alleging that, despite giving "considerable weight to the findings and opinion of [examining orthopedist] Dr. Kim" (R. 74), the ALJ's physical RFC "differs from the assessment of Dr. Kim in several important ways" with regard to Caffey's wrist and knee impairments (Doc. 11 at 15).

After a thorough discussion of Dr. Kim's report (SSA Ex. 15F), as well as medical records from several other physicians regarding Caffey's physical impairments, including treating physicians Dr. Rowland and Dr. Wrights, the ALJ then discussed how this evidence influenced the various physical limitations in her RFC assessment. Discussing Caffey's wrist and knee impairments, among others, the ALJ stated as follows:

> In terms of the claimant's alleged arthritis in the wrists, knees, hips and lower back, although the claimant has received treatment for the allegedly disabling impairment, that treatment has been essentially routine and/or conservative in nature since the alleged onset date …

Based on the claimant's knee condition, Dr. Kim recommended work restrictions precluding repeated ascending and descending stairs/ladders, repeated squatting, kneeling, crawling and no prolonged weightbearing.  He said the claimant's bilateral knee symptomatology can be characterized as intermittent slight to moderate pain, increasing to moderate on prolonged weightbearing and on repetitive range of motion.  Objective factors identified included crepitus in the bilateral knees; limitation on range of motion in the bilateral knees; and abnormal findings on MRIs of the bilateral knees.  (Exhibit 15F). The other physical exams have also shown mild crepitance, decreased range of motion and 4-5/5 strength of flexion/extension of the knees at times, tenderness of the knees, and a normal gait.  (Exhibits 19F, 20F and 22F).   The claimant's knee condition is accounted for in the residual functional capacity above with the limitation to occasionally climbing ramps/stairs, stooping, kneeling, crouching and crawling and never climbing ladders/ropes/scaffolds.

Dr. Kim described the symptomology with regard to claimant's hips, as intermittent and slight.   He also said the claimant's left shin symptoms were described as occasional slight pain and the claimant had no subjective complaints referable to the ankles.  (Exhibit 15F). Dr. Rowland noted the claimant had 3-4/5 strength of dorsi/plantar flexion at the ankles in September 2012 that improved to 4/5 in 2013 and 4/5 flexion at the hips once in January 2013.  (Exhibits 20F and 25F).   The limitation to standing/walking in combination at least 6 hours in an 8 hour workday also accounts for the claimant's back and knees, as well as his hip and ankle impairments.

Dr. Kim said the claimant's symptomatology with regard to his wrists and hands/thumbs is best described as intermittent slight pain, increasing to slight to moderate pain on repetitive gripping and grasping. He noted he would characterize the claimant's right middle finger pain as intermittent slight pain.   Based on the claimant's bilateral wrists/hands and thumb, work restrictions are recommended precluding repeated gripping and grasping activities.  (Exhibit 15F). The claimant also told Dr. Nudleman that he had some difficulties with hand grasping secondary to a fractured ring finger (*See* Exhibit 13F), and Dr. Rowland noted the claimant had 4/5 grip strength in Exhibit 19F.  The undersigned has accounted for the claimant's upper extremity impairments with the manipulative limitations resulting in the ability to frequently handle bilaterally.

(R. 68 – 69).  Considering the foregoing, the Court disagrees with Caffey's assertion that the decision "does not link the conclusions about Mr. Caffey's assessed capabilities to medical any opinions in the record evidence."  (Doc. 11 at 17).

Caffey argues the ALJ's determination that Caffey could stand and/or walk for at least 6 hours per 8-hour workday is inconsistent with Dr. Kim's opinion that Caffey should engage in "no prolonged weightbearing" (R. 547).  (*See* Doc. 11 at 16).  Similarly, Caffey asserts that the ALJ's allowance for frequent bilateral handling in the RFC (R. 61) is inconsistent with Dr. Kim's opinion that "precluded Mr. Caffey from repeated gripping and grasping activities."[15]  (Doc. 11 at 15 (citing (R. 545)).  However, the ALJ made reasonably clear that she considered the opinions of Dr. Kim, derived from a one-time examination in 2011, in conjunction with the more recent treatment notes of Caffey's two treating physicians.

Moreover, any alleged inconsistencies between the RFC and Dr. Kim's opinions identified by Caffey appear to be harmless.  Caffey argues that his bilateral wrist limitations and hand impairments "significantly impact Mr. Caffey's ability to engage in work at the 'light' level of physical exertion," and that "no prolonged weightbearing" would not allow for standing/walking for six hours in an eight hour workday.  (*See* Doc. 11 at 15 – 16).  However, at Step Five, the ALJ noted that she had ask the VE a hypothetical limiting Caffey to "the sedentary exertion level with the ability [to] stand/walk in combination for 2 hours in an 8 hour

---

[15] Caffey also complains that the RFC ignores Dr. Kim's notation "that Mr. Caffey's pain increased when he engaged in repeated use of his hands."  (Doc. 11 at 15 (citing R. 529)).  However, this notation was made in the section of Dr. Kim's notes documenting Caffey's subjective complaints of pain and other symptoms.  (*See* R. 529).  It is not a medical diagnosis.

workday[,]" for which the VE "identified a representative sample of jobs…" (R. 78). Thus, even if Caffey were limited to "sedentary" work instead of "light" work, and even if his ability to stand/walk was significantly reduced, substantial evidence indicates that Caffey would still be able to find work despite his physical impairments.

Accordingly, the Court **OVERRULES** Caffey's assertions of reversible error in Claim 2.

### C.    Claim 3 (Credibility Determination)

Finally, Caffey asserts that the ALJ reversibly erred in failing to sufficiently credit his testimony regarding his medications' side effects.

> In *Holt v. Sullivan,* 921 F.2d 1221 (11th Cir. 1991), [the Eleventh Circuit] articulated the "pain standard," which applies when a disability claimant attempts to establish a disability through his own testimony of pain or other subjective symptoms. 921 F.2d at 1223. The pain standard requires
>
>> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.
>
> 921 F.2d at 1223 (internal citation omitted). If a claimant testifies as to his subjective complaints of disabling pain and other symptoms … , the ALJ must clearly "articulate explicit and adequate reasons" for discrediting the claimant's allegations of completely disabling symptoms. *Foote*[ *v. Chater*], 67 F.3d [1553,] 1561–62[ (11th Cir. 1995) (per curiam)]. "Although this circuit does not require an explicit finding as to credibility, ... the implication must be obvious to the reviewing court." 67 F.3d at 1562 (quoting *Tieniber v. Heckler,* 720 F.2d 1251, 1255 (11th Cir. 1983)). The credibility determination does not need to cite " 'particular phrases or formulations' " but it cannot merely be a broad rejection which is " 'not enough to enable [the

district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.' " *Foote,* 67 F.3d at 1561 (quoting *Jamison v. Bowen,* 814 F.2d 585, 588–90 (11th Cir. 1987)).

*Dyer v. Barnhart*, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (per curiam). "[C]redibility determinations are the province of the ALJ, *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005), and [a court] will not disturb a clearly articulated credibility finding supported by substantial evidence, *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

At his first administrative hearing, Caffey testified that "he has looked for work and has had job offers; however, he has not been hired because his medications cause drowsiness." Caffey also testified that his medications (Lortab, Xanax, muscle relaxers, anti-inflammatories) were " 'knock out meds' that make him drowsy or put him to sleep" and that "he is asleep from his medications for 7 hours a day between 8:00 a.m. and 5:00 p.m." Additionally, he reported that his "doctors told him not to drive due to his medications[,] that he has fallen asleep at red lights before and burned himself the last time he cooked because he was on Lortab and fell asleep." At his supplemental administrative hearing, Caffey "reiterated his previous testimony that his medications sedate him and make him sleep 70% of the day. Otherwise, he is groggy, stays to himself and does not like to be around a lot of people." (R. 62 – 63).

The ALJ found that Caffey's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible…" (R. 63). The ALJ then explained:

> The undersigned has taken into account the claimant's alleged side effects from the use of medications and his testimony that his medications cause him to sleep for most of the day. The undersigned notes that the claimant's description of his sleep pattern since he started taking his current pain management regimen contrasts with the information in Dr. Nudleman [sic] narrative report in Exhibit 13F. Dr. Nudleman said the claimant had a sleep disorder that is "intermittent and halfway between minimal and slight secondary to nonrestorative sleep and joint pains." Dr. Nudleman said the claimant should not work in an environment where he has to do constant multitasking or where he has to do phase shifts of work. (Exhibit 13F). The undersigned has considered the potential for residual side effects from medication and/or residual pain in the residual functional capacity with the limitation to performing simple tasks with short simple instructions, which takes Dr. Nudleman's findings into account.[16]  The claimant also testified that he uses a cane when he is on medications to maintain balance. Therefore, the undersigned finds the claimant should never work at unprotected heights or with dangerous machinery due to the potential for medication side effects and/or pain and due to his musculoskeletal impairments.
>
> Overall, the record supports the finding that the claimant is capable of performing light work … Of particular note, the claimant has alleged an inability to do many things, including a denial of exercising and running in hearing testimony. However, the claimant has provided inconsistent information regarding daily activities. The most recent records from his treating physician, Dr. Wrights, indicates that he suffered from an injury to his right calf that occurred while running. (Exhibit 28F). The other medical evidence also contains references to various physical activities that are inconsistent with his testimony regarding what he is able to do and with his alleged medication side effects. For example, Dr. Kim noted the claimant "works out on an almost daily basis in the swimming pool and also does deep water

---

[16] In the portion of her decision evaluating the medical opinion evidence, the ALJ gave Dr. Nudleman's assessment "some weight" and repeated that she had "considered the potential for residual side effects from medication and/or residual pain in the residual functional capacity with the limitation to performing simple tasks with short simple instructions." (R. 75).

jogging. He also performs bench-pressing exercises." (Exhibit 15F). Dr. Dimmick also noted that since "has kept active" and "tries to do some weightlifting" since retiring from basketball. (Exhibit 14F). The claimant told Dr. Rowland that the increase in the Lortab "allows him to get back into the gym to exercise with his kids." He later said that taking a Soma with a Lortab allows him "to be able to shoot a little hoop," and allows him to be more active. Indeed, on March 16, 2013, the claimant said he was doing some training to help raise some money, and Dr. Rowland noted the claimant "works out with his clients, so it puts a demand on him." (Exhibits 19F, 20F and 25F). Dr. Wrights also noted the claimant "is active in basketball but limited in certain movement secondary to pain." (Exhibit 22F).

(R. 69 – 70).

Considering the above, the Court disagrees with Caffey's assertion that "the ALJ failed to provide a reasoned explanation for discrediting [his] testimony…" (Doc. 11 at 19). Caffey also argues "the limitation to only unskilled work fails to adequately allow for Mr. Caffey's medication side effects." (Doc. 11 at 17 – 18). However, he cites no authority in support this contention, nor does he directly address the ALJ's stated reasons for declining to fully credit Caffey's testimony (i.e. that it was not bolstered by Dr. Nudleman's report or by evidence of Caffey's reported life activities), instead insisting that his testimony must be accepted as true because other record evidence supports it.[17] These "contentions misinterpret

---

[17] For instance, Caffey asserts that his testimony is "supported by the opinions of two treating physicians, Dr. Wrights and Dr. Rowland…" (Doc. 11 at 19). However, the ALJ explicitly addressed the opinions of these physicians in regards to Caffey's claimed side effects of his medication, as follows:

The undersigned gives little weight to the notes submitted by both Dr. Rowland in Exhibit 23F and Dr. Wrights in Exhibit 24F. Both doctors noted the claimant's medications (Lortab, Xanax and Robaxin) can make the claimant sleepy. Therefore, they advised him that if any of his medications interfere with his ability to remain alert, he should not drive while on any of the "offending medications." These statements are merely advising him not

the narrowly circumscribed nature of [judicial] review, which precludes [the Court] from 're-weigh[ing] the evidence or substitut[ing] our judgment for that [of the Commissioner] ... even if the evidence preponderates against' the decision." *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (per curiam) (quoting *Bloodsworth*, 703 F.2d at 1239). *See also Mitchell v*, 771 F.3d at 782 ("The ALJ made a clearly articulated credibility finding and pointed to specific reasons for discrediting Mitchell's subjective complaints of disabling pain. That finding was supported by substantial evidence in the record. Furthermore, contrary to Mitchell's contention that the ALJ ignored evidence favorable to Mitchell, 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' *Dyer,* 395 F.3d at 1211 (quotation and brackets omitted).").

Accordingly, the Court **OVERRULES** Caffey's assertions of reversible error in Claim 3.

## V.   <u>Conclusion</u>

Caffey has requested that his case be remanded to the Commissioner with

---

to drive while on any medication that makes him sleepy. As noted above, the claimant has reported engaging in activities such as exercising to both doctors while taking these medications. However, the limitation to performing simple tasks with short simple instructions and the environmental limitations have been provided to account for any medication side effects.

(R. 76).

instructions that he be awarded benefits, while alternatively requesting remand for further proceedings on his application for benefits.   Generally, remand to the Commissioner "is warranted where the ALJ has failed to apply the correct legal standards." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).  This Court may enter an order "awarding disability benefits where the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt."  *Id.  See also Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991) ("The credibility of witnesses is for the Secretary to determine, not the courts…The decision of the Secretary here, however, rests not so much on the credibility of the 'history of pain' presented by Carnes, as on the adoption of a legal standard improper under Listing 10.10(A). []The record in this case is fully developed and there is no need to remand for additional evidence. Based on the facts adduced below and after application of the proper legal standard, we hold that claimant met the requirements of Listing 10.10(A) as early as 1982.").  Here, however, reversal is based upon the Commissioner's failure to adequately explain her reasoning in weighing different aspects of medical opinions.   It is not clear that the cumulative effect of the evidence establishes disability without any doubt.[18]  Thus, the Court will reverse and

---

[18] *Cf. Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (per curiam) ("Though we have found that the ALJ erred in his application of the legal standards, at this time we decline to enter an order requiring entitlement to disability benefits. While it is true that the opinions of Drs. Todd and Raybin provide strong evidence of disability, it is at least arguable that the report of Dr. Morse is to the contrary. Consequently, it is appropriate that the evidence be evaluated in the first instance by the ALJ pursuant to the correct legal standards."); *Hildebrand v. Comm'r of Soc. Sec.*, No. 6:11-CV-1012-ORL-31, 2012 WL 1854238, at *7 (M.D. Fla. May 4, 2012) ("The errors noted here compel a return of the case to the Commissioner to evaluate the evidence and make findings in the first instance. For the reasons set forth above, the Court finds that certain of the conclusions of the ALJ were not made in accordance with proper legal standards and are not supported by substantial evidence. The Court does not find that only one conclusion can be drawn from the evidence;

remand this action to the Commissioner for further proceedings.

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's August 20, 2015 final decision denying Caffey's application for a period of disability and DIB is **REVERSED and REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89 (1991), for further proceedings consistent with this decision. This remand under sentence four of § 405(g) makes Caffey a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292 (1993), and terminates this Court's jurisdiction over this matter.

Under Federal Rule of Civil Procedure 54(d)(2)(B), should Caffey be awarded Social Security benefits on the subject application following this remand, the Court hereby grants Caffey's counsel an extension of time in which to file a motion for fees under 42 U.S.C. § 406(b) until thirty days after the date of receipt of a notice of award of benefits from the SSA.[19] Consistent with 20 C.F.R. § 422.210(c), "the date

---

but that the conclusion that was drawn did not meet the standard of review. Under such a circumstance, it would not be appropriate for this Court to substitute its opinion of the weight to be given the evidence for that of the Commissioner. While the Court has the power to do just that in an appropriate case, the Court finds this is not such a case."), *report and recommendation adopted*, No. 6:11-CV-1012-ORL-31, 2012 WL 1854249 (M.D. Fla. May 21, 2012).

[19] *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1277 (11th Cir. 2006) (per curiam) ("Fed. R. Civ. P. 54(d)(2) applies to a § 406(b) attorney's fee claim."); *Blitch v. Astrue*, 261 F. App'x 241, 242 n.1 (11th Cir. 2008) (per curiam) (unpublished) ("In *Bergen v. Comm'r of Soc. Sec.,* 454 F.3d 1273 (11th Cir. 2006), we suggested the best practice for avoiding confusion about the integration of Fed. R. Civ. P. 54(d)(2)(B) into the procedural framework of a fee award under 42 U.S.C. § 406 is for a plaintiff to request and the district court to include in the remand judgment a statement that attorneys fees may be applied for within a specified time after the determination of the plaintiff's past due benefits by the Commission. 454

of receipt of notice … shall be presumed to be 5 days after the date of such notice, unless there is a reasonable showing to the contrary." If multiple award notices are issued, the time for filing a § 406(b) fee motion shall run from the date of receipt of the latest-dated notice.

Final judgment shall issue separately in accordance with this Order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 28th day of October 2016.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

F.3d at 1278 n.2.").